UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ANDRES DIAZ MARTINEZ, | No. 1:25-cv-1826 TLN CKD P |
| Petitioner, | |
| v. | ORDER AND |
| CHRISTOPHER CHESTNUT, Warden, California City Detention Facility, | FINDINGS AND RECOMMENDATIONS |
| Respondent. | |

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons which follow, the court recommends the petition for a writ of habeas corpus be granted and petitioner be released.

I. Proper Respondent

The government moves to dismiss all improperly named respondents. The proper respondent with respect to a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 is the person having custody over the petitioner. 28 U.S.C. § 2242. Because petitioner is currently detained at the California City Detention Facility, the Warden, Christopher Chestnut, is the proper respondent. The other respondents named by petitioner will be dismissed.

/////

/////

1

II.  Petitioner's Allegations

In his habeas petition, petitioner alleges as follows:

1.  Petitioner is a native of Colombia.  In October, 2022, he entered the United States near Eagle Pass, Texas.  After a brief detention, petitioner was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A).  On December 2, 2025,[1] petitioner appeared for a "routine check-in" with ICE.  At the check-in, petitioner was arrested.  Petitioner has been in continuous ICE custody since December 1, 2025.

2.  While on parole, petitioner was subject to BI SmartLINK monitoring.[2]  Upon arrest, petitioner was informed that he was being detained because of "noncompliance" or "violations" as to SmartLINK check-ins.  ECF No. 1 at 3.  Petitioner was not given specifics.

3.  Petitioner believes the officers who detained him were referring to 2 incidents:  "on one occasion, Petitioner could not complete a SmartLINK check-in at the exact scheduled time because he was driving for work as a delivery driver; on another occasion, he attempted to check in but experienced technical problems with the SmartLINK application and/or his phone that prevented timely registration."  Id.

4.  Petitioner asserts as to both instances "Petitioner promptly informed his [Intensive Supervision Appearance Program (ISAP)] / SmartLINK case specialist about the problem, and, to his understanding, the officer acknowledged his explanation."  Id.

5.  While on parole, petitioner worked and lived in the San Jose/Campbell area with his wife and son.  Petitioner worked as a delivery/ride share driver for Hotel Valencia.  Petitioner has paid taxes while in the United States and has no criminal record in the United States or Colombia.

6.  Petitioner filed an application for asylum on October 4, 2023, with his wife and son listed as "derivatives."  Id. at 2.

---

[1]  In his petition, petitioner asserts he was arrested on December 1, 2025.  ECF No. 1 at 2-3.  In declaration attached to petitioner's traverse, petitioner's wife indicates petitioner was arrested December 2, 2025.  ECF No. 13-1 at 15.

[2] From the BI Incorporated website, SmartLINK "provides a secure platform for real-time communication between officers and clients. . . enable[ing] agencies to securely monitor, collect data, and automate administrative work . . ."

7. Petitioner is authorized to work in the United States through April 2029.

Respondent does not contest any of petitioner's allegations.  Respondent does assert petitioner was "released under an Order of Release on Recognizance."  This appears to be in error as respondent does not point to any evidence in support of this and petitioner provides evidence with his traverse indicating he was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) as alleged in his petition.  ECF No. 13-1 at 4.[3]  With his traverse, petitioner also points to evidence confirming, among other things, his detention, id. at 2, arrival place and date, id. at 4, work authorization, id. at 10, and that he has applied for asylum.  Id. at 9.

III.  Standard for Habeas Relief.

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

IV.  Violation of Fifth Amendment

Petitioner contends that being arrested and detained without a determination that he is flight risk and/or danger to the community at a bond hearing violates his Fifth Amendment right to not have his liberty taken away without due process.[4]

---

[3] The document provided by petitioner indicates he was "paroled" under "212(d)(5)."  Section 212 of the Immigration and Nationality Act was codified at 8 U.S.C. § 1182.

[4] Petitioner also argues that being arrested and detained without a determination that he is flight risk and/or danger to the community violates the Administrative Procedure Act (APA) which requires that requires that federal agency actions not be "arbitrary, capricious, an abuse of

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.  Young v. Harper, 520 U.S. 143, 147-49 (1997).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey[ v. Brewer, 408 U.S. 471 (1972)]."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including living at home, working, and "be[ing] with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, this "condition is very different from that of confinement in a prison."  Id.  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  Id.  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty."  Id. at 481-84.

 A noncitizen can be paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) "for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizen] present[s] neither a security risk nor risk of absconding."  8 C.F.R. § 212.5(b) (quoting 8 U.S.C. § 1182(d)(5)(A)).  "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017).

Thus, in light of the foregoing, the Court finds that petitioner's prior release on parole created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S.

discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Because the court recommends that petitioner's due process claim be granted, the court does not reach this claim.

4

593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over three years, petitioner was free from custody before his re-detention, working and supporting his wife and son. The duration of his conditional release elevates and underscores his interest in liberty. See Pinchi v. Noem, 792 F. Supp. 3d 10125, 1033 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F.

Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 1:25-cv-0197 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. Even if petitioner failed to properly check in with ICE officials on two occasions as suggested, such violations of terms of release warrant a pre-detention hearing rather than automatic detention. Such minimal violations do not, by themselves, suggest dangerousness or flight risk in any respect. "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Id.

The court finds that the Mathews factors weigh in favor of finding that petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and

citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V. v. Wofford, 1:25-cv-2381 KES SAB, 2025 WL 3083934 at *6 (E.D. Cal. Nov. 4, 2025) (collecting cases).  Respondent points to no reasons that a pre-deprivation hearing could not be held and provides no evidence of "urgent concerns;" thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Accordingly, IT IS HEREBY ORDERED that all respondents other than Christopher Chestnut, in his capacity as Warden of the California City Detention Facility, are dismissed.

IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be granted.

2. Respondent be ordered to release petitioner and respondent and the Immigration and Customs Enforcement Agency be enjoined and restrained from re-detaining petitioner unless petitioner is provided with (1) written notice before a pre-deprivation bond hearing and (2) it is demonstrated, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven (7)** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within **seven (7)** days after service of the objections.  The

/////

/////

/////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 16, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
mart1826.mer